IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MEGA AMUSEMENT, INC. | ) | CHAPTER 11 |
| | ) | |
| Debtor, | ) | CASE NO. 14-59503-BEM |
| | ) | |
| _____ | ) | |

**AMENDED NOTICE OF HEARING ON MOTION REQUESTING ENTRY OF ORDER
APPROVING PRIVATE SALE OF PERSONAL PROPERTY OF DEBTOR NOT
IN THE ORDINARY COURSE OF BUSINESS OF DEBTOR**

**PLEASE TAKE NOTICE** that on October 21, 2014, Mega Amusement, Inc.

("Debtor") filed its "Motion Requesting Entry Of Order Approving Private Sale Of

Personal Property Of Debtor Not In The Ordinary Course Of Business Of Debtor". (The

"Motion").  Debtor amended said motion on November 14, 2014.

**PLEASE TAKE FURTHER NOTICE that the Court shall hold a hearing on**

**the Motion on the 17th day of December, 2014 at 11:00 o'clock a.m., in the U.S.**

**Courtroom, Room 1402, U.S. Courthouse, 75 Spring Street, Atlanta, Georgia.**

Your rights may be affected by the Court's ruling on these pleadings. You should

read these pleadings carefully and discuss them with your attorney, if you have one in

this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If

you do not want the court to grant the relief sought in these pleadings or if you want the

court to consider your views, then you and/or your attorney must attend the hearing. You

may also file a written response to the pleading with the Clerk at the address stated

below, but you are not required to do so. If you file a written response, you must attach a

certificate stating when, how and on whom (including addresses) you served the

response. Mail or deliver your response so that it is received by the Clerk at least two

- 1 -

business days before the hearing. The address of the Clerk's Office is Clerk, U. S.

Bankruptcy Court, 1340 Russell Federal Building, 75 Spring Street, Atlanta, Georgia

30303. You must also mail a copy of your response to the undersigned at the address

stated below and the United States Trustee at 75 Spring Street, SW, Suite 362, Atlanta,

Georgia, 30303.

      This 14th day of November, 2014

The Webster Firm, P.C.
/s/ Steven R. Webster
Steven R. Webster, Esq.
Georgia Bar No.: 745245
Attorney for Debtor

3235 Satellite Blvd.
Bldg. 400, Suite 300
Duluth, GA 30096
Phone: (678) 436-0082
Fax: (678) 436-0088
Email: swebster@twflaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **MEGA AMUSEMENT, INC.** | ) | **CHAPTER 11** |
| | ) | |
| **Debtor,** | ) | **CASE NO. 14-59503-BEM** |
| | ) | |
| _____ | ) | |

### AMENDED MOTION REQUESTING ENTRY OF ORDER APPROVING PRIVATE SALE OF PERSONAL PROPERTY OF DEBTOR NOT IN THE ORDINARY COURSE OF BUSINESS OF DEBTOR

COMES NOW, Mega Amusement, Inc. ("Debtor"), by and through the undersigned counsel, and hereby files this "Motion Requesting Entry Of Order Approving Private Sale Of Personal Property Of Debtor Not In The Ordinary Course Of Business Of Debtor" (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

### Jurisdiction

1.

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### Background

2.

On May 14, 2014 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (as amended, modified, or supplemented the "Bankruptcy Code").

[1]

3.

Debtor is a Georgia corporation and as its business (the "Business"), Debtor operates an entertainment venue in Duluth, Gwinnett County, Georgia. Debtor operates the Business from 2075 Market Street, Duluth, GA  30096 (the "Leased Property").

4.

Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Debtor continues to operate its business as a debtor-in-possession.

5.

Debtor files this motion pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, which require approval from the Court for any sale of assets of the Debtor not made in the ordinary course of business of Debtor.  Debtor also cites Section 105(a) of the Bankruptcy Code as further authority for this Court to invoke its equitable powers to effect relief requested in this Motion.

6.

Debtor has received an offer from Tok Stewart, an individual, to purchase all of Debtor's personal property assets on January 15, 2015, for a purchase price of $1,350,000.00.

7.

Debtor has accepted Ms. Stewart's offer, contingent upon approval from this Court.  A copy of the Asset Purchase Agreement between Debtor and Ms. Stewart is attached hereto as Exhibit "A".

8.

Currently, there are only two judgment creditors of the Debtor who have filed claims in this Court's Claims Register that may claim a general lien interest over the personal property assets of Debtor; namely, First Mercury Insurance Company, Inc. (filed Claim No. 4 in the amount of $34,463.52) and Broadcast Music, Inc. (filed Claim No. 7 in the amount of $17,843.19)

9.

The remainder of Debtor's creditors are either priority or unsecured creditors. Filed priority claims against Debtor's estate currently total $376,733.70 and filed unsecured claims against Debtor's estate currently total $200,310.15.

**Relief Requested**

10.

By the Motion, Debtor requests entry of an order: (a) approving and allowing the sale of all company personal property at a private sale to Tok Stewart on January 15, 2014 free and clear of any liens, claims, interests and encumbrances; (b) allowing costs of the sale to be paid from the proceeds of the sale; (c) approving payment of the judgment liens against the personal property; and (d) allowing remaining proceeds from the sale to be held in the trust account of Debtor's counsel for distribution in accordance with a future order from this Court designating creditors to be paid.

11.

Section 363(b) of the Bankruptcy Code provides that a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Bankruptcy Rule 6004(f) provides that "all sales not in the

[3]

ordinary course of business may be by private sale or by public auction." Under the

prevailing case law, a sale under Section 363(b) requires that the Court "expressly find

from the evidence presented . . . a good business reason" to approve the sale. Committee

of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d

Cir. 1983). Accord Stephens Industries, Inc. v. McClung, 789 F.2d 386, 389-90 (6th Cir.

1986); In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).


### 12.

Debtor submits that approval of the proposed sale of its personal property located

at 2075 Market Street, Duluth, GA 30096 to Ms. Stewart would be supported by a good

business reason as required by Lionel.  The sales price is large enough so that all

creditors asserting valid interests in and against the property will be paid in full from the

transaction. Further, Debtor believes that remaining proceeds will provide a substantial

amount of funds to pay a high percentage of amounts owed to Debtor's unsecured

creditors, which would allow the Debtor to file a plan to extinguish such debts and

conclude the operations of the Business under the Bankruptcy Code.

### 13.

In addition, Section 105(a) of the Bankruptcy Code authorizes the Court to "issue

any order, process, or judgment that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a). The purpose of Section 105(a) is to insure a

Bankruptcy Court's power to take whatever action "is appropriate or necessary in aid of

the exercise of its jurisdiction." 2 Collier on Bankruptcy, 105.01, at 105-2 (15th ed.

[4]

1993). Thus, this Court may exercise its equitable powers to grant the relief requested in this Motion.

14.

Notice of the Motion and any hearing thereon shall be provided to the full list of creditors, the stockholders of Debtor and the United States Trustee.

WHEREFORE, Debtor requests that the Court: (i) approve the Motion and relief requested herein and (ii) grant such other relief as is deemed just and proper.

Respectfully submitted this 14st day of November, 2014.

The Webster Firm, P.C.

/s/ Steven R. Webster
Steven R. Webster, Esq.
Georgia Bar No.: 745245
Proposed Attorney for Debtor

3235 Satellite Blvd.
Bldg. 400, Suite 300
Duluth, GA  30096
Phone: (678) 436-0082
Fax: (678) 436-0088
Email: swebster@twflaw.com

[5]

EXHIBIT "A"

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (hereinafter referred to as the "Agreement") is made and entered into this 14ᵗʰ day of October, 2014 by and between **MEGA AMUSEMENT, INC.**, a Georgia corporation (hereinafter referred to as the "Seller") and **TOK STEWART**, a Georgia resident (hereinafter referred to as the "Purchaser").

### WITNESSETH

WHEREAS, Seller owns and operates a business known as **"WILD BILL"** on the property located at **2075 Market Street, Duluth, Georgia 30096** (the "Business").

WHEREAS, The Business is operated as an independent business of Seller that is separate and distinct from Seller's other business operations, such that assts of the Business can be separately identified and transferred to Purchaser.

WHEREAS, Purchaser desires to purchase from Seller and Seller desires to sell and transfer to Purchaser, all the assets except the excluded assets as defined in Section 2 of this Agreement herebelow, used in connection with the Business as described below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound hereby, agree as follows:

1. <u>Description of Assets to be Purchased.</u> Subject to the terms and conditions of this Agreement, at the Closing, Seller, in consideration for the payment of the Purchase Price, shall grant, sell, assign, transfer and deliver to Purchaser, and Purchaser shall purchase and acquire from Seller, all of Seller's rights, titles, interests and benefits in and to substantially all of the assets owned by Seller and used in connection with the operation of the Business (the "Assets"), including, without limitation, the following:

   1.1.    Personal Property.  All of the inventory, furniture, fixtures, equipment, machinery, merchandise, furnishings, tools, signs, telephone and other communications equipment, supplies, displays, uniforms, promotional materials, advertisements, computer hardware and software, and other personal property located at 2075 Market Street, Duluth, Georgia 30096, and utilized in connection with the operation of the Business (collectively, the "Personal Property").

   1.2.    Licenses and Permits.  Any and all transferable consents, authorizations, variances or waivers, licenses, permits, registrations, certificates, approvals and similar rights from any governmental or quasi-governmental agency, department, board, commission, bureau or other entity or instrumentality with respect to the Business held by or granted to Seller;

1

1.3.   Books and Records.. All books, records, financial statements, ledgers, files, customer and mailing lists, employment records (including, without limitation, personnel files and wage payment records), maintenance records, documents, correspondence and other records of a material nature used by Seller in connection with the operation of the Business;

1.4.   Intangible Assets.  All of Seller's goodwill associated with the Business, including, but not limited to the telephone and facsimile number, customer lists, and prospect lists associated with the Business;  and

1.5.   Miscellaneous.  Except for the any assets expressly excluded herein, all other assets, properties, rights and interests of Seller otherwise employed in or related to the operation of the Business of every kind, nature and description, whether tangible · or intangible, real, personal or mixed, including, without limitation, all of which are to be sold, transferred, conveyed, assigned and delivered to Purchaser at the closing.

2.   Excluded Assets.   Notwithstanding anything to the contrary set forth herein, this Agreement shall not include the following assets, properties and rights of Seller (collectively, the "Excluded Assets"):

2.1.   Any permit, approval, license, qualification, registration, certification, authorization or similar right, including but not limited to alcoholic beverage sales licenses, that by its terms is not transferable to Purchaser;

2.2.   Any cash, cash equivalents or marketable securities and all rights to any bank accounts of Seller;

2.3.   Any food stock inventory item including alcoholic beverage inventory;

2.4.   Insurance Policies, accounts receivable, merchant credit card receipts, utility or other contract deposits of Seller;

2.5.   Any right associated with the utilization of the trade name of "Wild Bill"; and

2.6.   Any entertainment related licenses and/or rights held by Seller in connection with the Business, including but not limited to song rights and copy rights.

3.   No Assumption of Liabilities.  Purchaser shall not assume, in connection with the transactions contemplated hereby, any liability or obligation of Seller whatsoever, unless expressly agreed to herein or otherwise in writing prior to Closing and Seller shall retain responsibility for all liabilities and obligations accrued as of or on the

Closing Date and all liabilities and obligations arising from Seller's operations prior to or on the Closing Date, whether or not accrued and whether or not disclosed.

4. <u>Purchase Price and Payment.</u>  Subject to the adjustments provided for herein, the Purchase Price of the Business shall be ONE MILLION THREE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($1,350,000.00), which shall be due and payable as follows:

    4.1. <u>Earnest Money.</u> Upon the full execution and delivery of this Agreement, Purchaser shall pay the Earnest Money in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "Earnest Money") by check.  The Earnest Money shall be held in escrow by Webster Firm, P.C., located at 3235 Satellite Boulevard, Suite 300, Duluth, Georgia 30096 (the "Escrow Agent"), in an non-interest bearing account. The Earnest Money shall be applied 100% to the Purchase Price at Closing (as hereinafter defined) or shall be paid to Seller at Closing for the purchase of the Business, unless Purchaser shall be entitled to the return of the Earnest Money pursuant to an express provision hereof.  The Earnest Money shall be held and disbursed by Escrow Agent in accordance with the terms and provisions of this Agreement and the escrow provisions attached hereto as Exhibit A.  Escrow Agent joins in the execution of this Agreement solely for the purpose of acknowledging receipt of the Earnest Money and its agreement to hold the same pursuant to the terms hereof.

    4.2. <u>Cash Balance at Closing.</u>  Purchaser shall pay the balance of the Purchase Price, subject to closing adjustments, pro-rations and credits as provided for herein, by certified or cashier's check or wire transfer payable to Escrow Agent for the benefit of Seller at the Closing.

    4.3. <u>Allocation of the Purchase Price.</u> TBD

5. <u>Closing.</u>  The Closing shall be at the offices of  Escrow Agent (or such other place mutually agreed upon by Seller and Purchaser) on or before ~~January 15, 2015~~ or on such date and at such time as is otherwise mutually agreed upon by Seller and Purchaser (the  "Closing Date").   As used herein, "Closing" means the consummation of the purchase and sale transaction contemplated by this Agreement, which shall occur upon the satisfaction by the parties hereto of the various agreements, terms, conditions and covenants set forth herein.

6. <u>Closing Deliveries.</u>  At the Closing, Seller shall deliver to Purchaser the following:

    6.1. <u>Bill of Sale.</u>  Seller shall deliver a blanket Bill of Sale and Assignment and such other documents of title or authority as may be reasonably requested by Purchaser, duly executed, conveying to Purchaser all of the assets of the

3

Business with responsibility for the obligations relating to the Assets being apportioned appropriately between the parties as of the effective possession date with appropriate indemnifications for the parties.

6.2. <u>Settlement Statement.</u> A closing statement which accurately reflects the consummation of the transactions contemplated hereunder, including without limitation, both parties respective portion of taxes and utilities apportionable pursuant to Section 7.

6.3. <u>Assumed Contracts.</u> An assignment of all leases and any other contracts assumed by Purchaser, duly executed and acknowledged by Seller, assigning to Purchaser all of Seller's rights, title and interest in and to such leases and other Assumed Contracts.

6.4. <u>Seller Certification.</u> A certification by Seller that all representations and warranties made by Seller in this Agreement are true and correct in all material respects on the Closing Date, except for such variances as may be approved by Purchaser set forth in such certificate.

6.5. <u>Other Instruments.</u> All other instruments and documents reasonably required to effectuate this Agreement and the transactions contemplated thereby including but not limited to a non-competition agreement.

7. <u>Apportionment of Taxes and Utilities.</u> Seller shall be liable and responsible for all taxes, including sales taxes or payroll taxes owed by Seller pursuant to Seller's operation of the Business and taxes incurred during Purchaser's operation of the business will be paid by Purchaser; if this item is not settled or finally determined by closing, Seller will remain liable to Purchaser for the payment of the same and any lawful demands, assessments, or levies filed for same by taxing authorities. Further, Seller covenants that Seller will file such final tax returns and reports as are required under the law.

Any and all ad valorem taxes owed by Seller pursuant to the operation and ownership of the business for this calendar year shall be pro-rated by Seller and Purchaser. If this amount is not settled at closing, then the parties agree that such proration will be accomplished outside of closing and is not intended by the parties to be reflected herein.

All obligations, debts, trade and accounts payable, and other expenses in conjunction with the operation of the Business shall be paid by Seller at or prior to the time of possession of Business and no such items or obligations shall be assumed by Purchaser. All rents and other income shall be prorated at closing. All real and personal property taxes, utilities, and any prepaid expenses shall be prorated between the parties as of the date of closing.

4

8.   Casualty Loss.  In the event that any portion of the Business shall be damaged or destroyed by fire or other casualty after the Agreement Date and before the Closing Date, Purchaser may, at its option, either (a) this Agreement and all rights and obligations hereunder shall immediately terminate and the Earnest Money shall immediately be returned to Purchaser , or (b) the purchase and sale contemplated hereby shall be closed as provided herein except that Seller shall at Closing assign to Purchaser all of Seller's interest in any and all insurance proceeds received or receivable by reason of such casualty.

9.   As-Is Sale.  Except as otherwise warranted or represented in this Agreement, Purchaser agrees to take the Business "as-is" with all faults and conditions thereon. Notwithstanding foregoing, Seller hereby warrants that as of Closing, all equipment and fixtures shall be in good working condition.

10.  Additional Representations.  Warranties and Covenants of Seller.  Seller makes the following representations and warranties to the Purchaser, all of which survive through and after the Closing Date:

   10.1. Ownership of Assets.  At the date of this Agreement, Seller is the owner of and has good and marketable title to all of the Business.  Seller has the full legal right, power and authority to sell, assign and transfer to Purchaser, and upon closing will have the full legal right, power and encumbrances of any nature.  To the best of Seller's knowledge, the Business constitutes all of the assets necessary and sufficient to conduct the operations of the Business in accordance with Seller's normal and ordinary practices.

   10.2. Governmental Consents.  No consent or approval by any Governmental Entity is required in connection with execution and delivery of this Agreement or the consummation by Seller of the transactions contemplated hereby, except for a required consent and/or approval from the bankruptcy trustee or court in relation to Seller's filing of Chapter 11 bankruptcy petition.

   10.3. Compliance with Laws.  Seller is not in violation of any applicable zoning regulation, ordinance or other law, order, regulation, restriction or requirement relating to its operations or properties, whether such properties are owned or leased and has all licenses, permits, and any and all other authorizations of any type necessary to own and operate the Business in the manner in which it is currently owned and operated.

   10.4. Tax Returns and Liabilities.  As may affect or relate to the Business, all tax returns for all Taxes of any kind which are due to have been filed in accordance with any applicable law have been duly filed, all Taxes shown to be due on such returns have been paid in full, and the amounts so paid are

5

adequate to pay city, county or Federal income taxes, franchise taxes, personal property taxes, intangibles taxes and all other taxes of any kind applicable to the Business, including Interest and penalties related thereto. Seller agrees to promptly provide sufficient documentation of same to Purchaser.

10.5. Contracts.  There are no customer, supplier, purchase, distribution, sale, employment, construction, management, leasing, service, equipment, maintenance or other contracts, leases or agreements of any kind, either written or oral, entered into by Seller or the Business.

10.6. Litigation.  To the best of Seller's knowledge, there is no action, suit or proceeding pending or threatened against or affecting the Business, or arising out of Seller's ownership, management or operation of the Business, this Agreement or the transactions contemplated hereby.

10.7. Disclosure.  All information provided by Seller is true and correct in all material aspects and fairly depicts the value and condition of the Business. Neither any representation or warranty by Seller set forth in this Agreement, nor any certificate, statement, writing or document furnished or to be furnished by or on behalf of Seller pursuant to this Agreement, nor any document or certificate delivered to Purchaser pursuant to this Agreement, or in connection with the actions contemplated hereby, contains or will contain at the time delivered any untrue statement or material fact or omits or will omit at the time delivered a material fact necessary to make the statements contained therein not misleading. Seller hereby agrees to defend and to indemnify Purchaser and to hold Purchaser wholly harmless from and against any and all losses, liabilities, damages, costs (including, without limitation, court costs) and expenses (including, without limitation, reasonable attorneys' fees actually incurred) which Purchaser incurs as a result of, or with respect to, any inaccuracy in or breach of any representation, warranty, covenant or agreement by Seller contained in this Agreement.

11.  Notices.  Any notice or communication required or permitted hereunder shall be in writing and shall be sent either by:  (a) personal delivery service with charges therefore billed to shipper; or (b) United States Mail, postage prepaid, certified mail, return receipt requested; as the case may be, at the address set forth below, or at such other address as Purchaser or Seller may have designated by notice to the others given as provided above.

Seller:          Amy Lynn Hoch, Pres/CEO
                 6101 Misty Valley Drive
                 Acworth, GA  30102

6

With a Copy to:  The Webster Firm, P.C.
3235 Satellite Boulevard
Building 400, Suite 300
Duluth, Georgia 30096
Attn: Steven Webster, Esq.

Purchaser  *4673 Blackwater way*
*Suwanee*
*GA 30024*

With a Copy to:  Kim & Im, LLC
3700 Crestwood Parkway, Suite 350
Duluth, Georgia 30096
Attn: Si Hyeon Kim, Esq.

Any notice or communication sent as above provided shall be deemed given or delivered:  (a) upon receipt if personally delivered (provided that such delivery is confirmed by the courier delivery service); or (b) if sent by United States mail, on the date appearing on the return receipt therefore.

12.  Brokers. N/A.

13.  Remedies.

13.1. Purchaser Default.  If the Closing shall fail to occur as a result of Purchaser's failure to satisfy its obligations under this Agreement for any reason other than as otherwise set forth herein, Seller shall be entitled to retain the Earnest Money as liquidated damages, it being acknowledged that actual damages would be difficult to determine and the Earnest Money is a reasonable estimate of same and not a penalty.

13.2. Seller default.  If, on the Closing Date, Seller has failed to satisfy its obligations under this Agreement, the Earnest Money shall be immediately returned to Purchaser and Purchase shall have a right to right to specific performance of this Agreement.

14.  Conduct of Business By Seller Prior to Closing.  For the period commencing on the Agreement Date and ending on the Closing Date, Seller shall, except as expressly required hereby and except as otherwise consented to in advance in writing by Purchaser:

14.1. conduct the Business in the ordinary course on a basis consistent with past practice and not engage in any new line of business or enter into any agreement, transaction or activity or make any commitment with respect to the Business, except those in the ordinary course of business;

14.2. use its best efforts to preserve intact the goodwill and business organization of the Business, keep any non-affiliated employees of the Business available to Purchaser and preserve the relationships and goodwill of the Business with customers, distributors, suppliers, employees and other persons or entities having business relations with the Business or Seller;

14.3. duly and timely file or cause to be filed all reports and returns required to be filed with any Governmental Entity and promptly pay or cause to be paid when due all Taxes, assessments and governmental charges, including interest and penalties levied or assessed, unless diligently contested in good faith by appropriate proceedings;

14.4. maintain in existing condition and repair (ordinary wear and tear excepted), consistent with past practices, all buildings, offices, shops and other structures located on the Subject Premises, and all equipment, fixtures and other tangible personal property located on the Business;

14.5. maintain supplies and inventory at levels that are in the ordinary course of business and consistent with past practice;

14.6. continue to extend customers credit, collect accounts receivable and pay accounts payable and similar obligations in the ordinary course of business consistent with past practice;

14.7. perform in all material respects all of its obligations under all, and not default or suffer to exist any event or condition that with notice or lapse of time or both could constitute a default under any Assumed Contract (except those being contested in good faith) and not enter into, assume or amend any contract or commitment that is our would be an Assumed Contract;

14.8. maintain in full force and effect and in the same amounts policies of insurance comparable in amount and scope of coverage to that now maintained by or on behalf of Seller or the Business;

14.9. continue to maintain its books and records consistent with past practice;

15. <u>Conditions Precedent to Purchaser's Obligation to Close.</u>   All of Purchaser's obligations hereunder are expressly conditioned on the satisfaction at or before the Closing, or at or before such earlier time as may be expressly stated herein, of each

8

of the following conditions (any one or more of which may be waived in writing in whole or in part by Purchaser, at Purchaser's option):

15.1. Due Diligence Period. For a period of forty five (45) days after the execution of this Agreement by Seller and Purchaser (the "Due Diligence Period"), Purchaser shall have the right to determine in Purchaser's sole and absolute discretion whether the Business and its Assets are acceptable to Purchaser and that Purchaser desires to conclude the contemplated sale-purchase transaction. Purchaser and Seller agree that Purchaser shall have the absolute right prior to the expiration of the Due Diligence Period to terminate this Agreement for any or no reason by giving written notice to Seller whereupon this Agreement will be terminated and the Earnest Money shall be refunded to Purchaser.

15.2. Sales Verification. N/A.

15.3. Accuracy of Representations. All of the representations, warranties and covenants of Seller contained in this Agreement shall have been true and correct in all material respects when made, and shall be true and correct in all material respects on the Closing Date with the same effect as if made on and as of such date.

15.4. Performance. Seller shall have performed, observed and complied with all covenants, agreements and conditions required by this Agreement to be performed, observed and complied with on or prior to the Closing.

15.5. Documents and Deliveries. All instruments and documents required on Seller's part to be delivered hereunder or to otherwise effectuate this Agreement and the transactions contemplated hereby shall have been delivered to Purchaser and shall be in form and substance reasonably satisfactory to Purchaser and consistent with the requirements herein.

15.6. Permits. Purchaser shall have obtained all permits, licenses, consents, and other authorizations necessary to conduct the Business in the manner in which it is currently conducted.

15.7. Lease. N/A.

15.8. Material Adverse Change. Between the date hereof and the date of the Closing, there shall have been no material adverse change in the physical or financial condition of the Business.

16. Non-Competition Agreement. Seller acknowledges that to protect adequately the interest of Purchaser in the Business, it is essential that any non-compete covenant

9

with respect thereto cover all of the Business and the entire restricted territory. Seller and all of Seller's officers and key employees shall not, for a period of five years, in any manner, directly or indirectly or by assisting any other person or entity, engage in, have an equity or profit interest in, or render services of any nature to any person or entity that in any way competes with the Business within a fifty (50) mile radius thereof. Seller shall not, prior to the fifth (5th) anniversary of the Closing Date, in any manner, directly or indirectly or by assisting any other person or entity, recruit or hire away or attempt to recruit or hire away, on any of their behaves or on behalf of any other person, any person employed by Seller on either of the Agreement Date or the Closing Date. Seller shall not, prior to the fifth anniversary of the Closing Date, in any manner, directly or indirectly or by assisting any other person or entity, solicit or attempt to solicit any current or former customer of the Business.

17. <u>Standstill Agreement.</u> After execution and delivery of this Agreement, but prior to the earlier to occur of legal termination of this Agreement or the Closing Date, Seller will not solicit, entertain, negotiate, accept, or pursue any offers or expressions of interest to purchase the Business from any other prospective purchaser.

18. <u>Purchaser Covenants and Other Agreements.</u>

    18.1. <u>Permits.</u> Purchaser shall use its reasonable best efforts to obtain such permits, authorizations, and consents referred to herein.

19. <u>Miscellaneous.</u>

    19.1. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement between the parties hereto and it is understood and agreed that all undertakings and agreements heretofore had between these parties are merged herein and superseded hereby. No representation, promise or inducement not included herein shall be binding upon any party hereto. The terms "Seller" and "Purchaser" shall be construed in the plural and the appropriate gender will be read into all pronouns used herein to reference any of said parties whenever the sense of this Agreement so requires.

    19.2. <u>No Oral Modifications.</u> This Agreement shall not be modified or amended except by an instrument in writing executed by or on behalf of Purchaser and Seller.

    19.3. <u>Binding Effect.</u> The provisions of this Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective heirs, successors and assigns and the legal representatives of their estates, as the case may apply.

10

19.4. Delivery of Possession.   Possession of the Business shall be granted to Purchaser no later than the Closing date.

19.5. Calculation of Time.   If the time period by which any right, option or election provided under this Agreement must be exercised, or by which any act required hereunder must be performed, or by which the Closing must be held, expires on a Saturday, Sunday or legal holiday, then such time period shall be automatically extended through the close of business on the next regular Business Day.

19.6. Counterparts.   This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile or ".pdf" signature page were an original thereof.

19.7. Captions.   Captions contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement nor the intent of any provision hereof.

19.8. Governing Law.   This Agreement shall be governed by and construed under the laws of the State of Georgia.

19.9. Waiver of Conditions.   Conditions precedent to the obligation of Purchaser to close hereunder are for the benefit of Purchaser only and any or all of said conditions may be waived in the discretion of Purchaser: provided, however, that any such waiver must be made expressly in a writing signed by Purchaser, and shall not be deemed to have occurred by implication.

19.10.  No Interest on Earnest Money.   The Earnest Money deposited hereunder shall not be deposited in an interest-bearing account.

19.11.  Agreement Date.   The "Agreement Date" means the last date upon which this Agreement was executed and accepted by Purchaser or Seller, as the case may be.

19.12.  Legal Advice.   Each party has received independent legal advice from its attorneys with respect to the terms and conditions of this Agreement. This Agreement shall be construed in accordance with its meaning and not for or

11

against any party based upon attribution to such party as the source of the language in question.

19.13. Effectiveness of Negotiations. Neither the existence of any negotiations or other discussions concerning this Agreement and the transactions contemplated by it, whether past, present or future, nor anything in or concerning any such discussions, including, without limitation, any draft agreements or other documents. shall bind any party in any way unless and until such discussions are subsequently memorialized in a formal written agreement duly executed and delivered by all parties to such agreement in their sole and absolute discretion. Neither such discussions nor any such draft documents shall be used at any time for any purpose whatsoever in any pending or future litigation. All such negotiations and other discussions are confidential.

19.14. No Third-Party Beneficiaries. This Agreement is intended solely to establish various rights between the parties to this Agreement, and no "third-party" or other person shall be entitled to any rights or benefits from this Agreement or to rely on this Agreement in any way.

19.15. Assignment. Purchaser shall not assign its right, duties or obligations under this Agreement without the prior written consent of Seller, which approval shall be at the sole discretion of Seller. Notwithstanding the foregoing, Purchaser shall have the right, to assign this Agreement to an entity which is affiliated with Purchaser. Any such assignee shall assume all duties and obligations of Purchaser pursuant to this Agreement; provided, however, that any such assignment of Purchaser's interest in this Agreement shall not relieve the original Purchaser of any duties, obligations or liabilities hereunder.

19.16. Attorneys' Fees and Costs. In the event of a breach of any term of this Agreement whereby the party not in breach employs an attorney to protect or enforce its rights here under and prevails, than the breaching party agrees to pay the other party's costs and expenses including reasonable attorney's fees, actually incurred.

20. Special Stipulations. The following stipulations shall control if in conflict with any of the foregoing provisions:

20.1. The closing of transaction contemplated herein this Agreement shall be contingent upon Purchaser procuring an Small Business Administration guaranteed financing in the amount of not less than 80% of the Purchase Price with at least 25 year repayment terms with an applicable interest rate not higher than prime rate plus 2% from a reputable lending institution.

Purchase shall exercise its best effort to procure such financing. Purchaser shall provide Seller with a copy of loan commitment letter from a lender if requested by Seller.

20.2. The closing of transaction contemplated herein this Agreement shall also be contingent upon Purchaser acquiring a fee simple title to that certain real property located at 2075 Market Street, Duluth, Georgia 30096, currently leased by Seller for the Business with the acquisition cost of such fee simple title to such real property not higher than $3,000,000.00.

20.3. Seller and Purchaser acknowledge and agree that this Agreement shall supersede any and all previous agreements whether oral or written in regard to the sale and acquisition of the Business between Seller and Purchaser.

20.4. In accordance with Paragraph 10.2 herein above, this contract is contingent upon the Seller obtaining approval of this agreement from the Bankruptcy Court in connection with its current pending Chapter 11 bankruptcy petition.

*[Remainder of page intentionally left blank, Signatures on the following page]*

13

IN WITNESS WHEREOF, the parties hereto set their respective hands and affixed their seals on the day and year indicated below.

SELLER:
MEGA AMUSEMENT, INC.,
a Georgia corporation

_____ (Seal)
BY: Amy Lynn Hoch
ITS: President/CEO/Sec.

[Corporate Seal]

PURCHASER:
TOK STEWART,
a Georgia resident

_____ (Seal)

14

# EXHIBIT A

## ESCROW PROVISIONS

The Earnest Money shall be applied to the Purchase Price at Closing or shall be paid to Seller, unless Purchaser shall be entitled to the return of the Earnest Money pursuant to an express provision hereof. If for any reason the Closing does not occur and either party makes a written demand upon Escrow Agent for payment of the Earnest Money, Escrow Agent shall give written notice to the other party of such demand. If Escrow Agent does not receive a written objection from the other party to the proposed payment within ten (10) business days after the giving of such notice, Escrow Agent is hereby authorized to make such payment. If Escrow Agent does receive such written objection within such ten (10) business day period, Escrow Agent shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final non-appealable judgment of a court of competent jurisdiction.

However, Escrow Agent has the right at any time to deposit the Earnest Money with the Clerk of the Supreme Court of the county in which the Property is located and to commence an action of interpleader. Escrow Agent shall give written notice of such deposit to Seller and Purchaser and upon such deposit and commencement of the action, Escrow Agent shall be relieved and discharged of all further obligations and responsibilities hereunder.

The parties acknowledge that Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that Escrow Agent shall not be deemed to be the agent of either of the parties, except as expressly set forth herein, and that Escrow Agent shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Agreement or of any escrow agreement or involving gross negligence.

Escrow Agent may rely upon, and shall be protected in acting or refraining from acting upon, any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties, provided that any modification of this Agreement shall be signed by Escrow Agent, Seller and Purchaser.

15

Seller and Purchaser shall jointly and severally hold Escrow Agent harmless against any loss, damage, liability or expense incurred by Escrow Agent and not caused by its willful misconduct or gross negligence, arising out of or in connection with its entering into this Agreement and carrying out its duties hereunder, including the reasonable costs and expenses of defending itself against any claim of liability or participating in any legal proceeding.

Escrow Agent may resign at will and be discharged from its duties or obligations hereunder by giving notice in writing of such resignation specifying a date when such resignation shall take effect; provided, however, that (i) prior to such resignation a substitute escrow agent is approved in writing by Seller and Purchaser, which approval shall not be unreasonably withheld or delayed, or (ii) Escrow Agent shall deposit the Earnest Money and any interest accrued thereon with a court of competent jurisdiction.

In the event of a dispute between Seller and Purchaser, the prevailing party shall pay all costs and expenses incurred or made by Escrow Agent in connection with the carrying out of its duties hereunder. Escrow Agent shall not charge any such fees, expenses, disbursements or advances if the Earnest Money and interest accrued thereon is released from escrow hereunder without a dispute between Seller and Purchaser with respect thereto.

Escrow Agent's agreements and obligations hereunder shall terminate and Escrow Agent shall be discharged from further duties and obligations hereunder upon final payment of the Earnest Money and interest accrued thereon, provided same is made in accordance with the terms of this Agreement

16